KEATON v. BONAPARTE, County Treas., et al.

No. 25974. Sept. 10, 1935.

Rehearing Denied Oct. 22, 1935.

Gordon Stater, Wilson & Wilson, Shirk, Danner & Earnheart, Snyder, Owen & Lybrand, L. D. Threlkeld, and Mont F. Highley, for plaintiff in error.

Lewis R. Morris, Co. Atty., for defendants in error.

PER CURIAM. This is an action brought by J. R. Keaton in the district court of Oklahoma county against E. B. Bonaparte, county treasurer, for the recovery of alleged illegal taxes levied for the fiscal year 1928-1929 on real estate belonging to the plaintiff. The taxes were paid under protest and notice thereof duly served, and within the time prescribed by law separate suits were filed to recover the amount alleged to be illegal. Two suits were filed identical in sustance, one being for the taxes for the first half of the year and the other for the taxes for the last half; therefore, the cases were consolidated at the trial. Proper orders were made substituting the successive county treasurers as defendants. General demurrers to the respective petitions were overruled. Answer was a general denial. Trial was had to the court and a judgment rendered for the defendant. The case is now properly before us on appeal. The parties occupy the same position here as in the trial court and will be referred to as plaintiff and defendant, respectively.

There is no substantial conflict in the evidence. Plaintiff made a voluntary return of his real estate in 1927. The value which he placed on said property in his voluntary return was subsequently raised by the county assessor in the aggregate amount of $11,500. The evidence of the defendant is that it was the custom of the county assessor's office where assessments were raised to mail a post card to the taxpayer advising him of such action in time to enable the taxpayer to appear before the board of equalization and protest such raise, should he so desire. However, the evidence fails to show that a card was mailed to the plaintiff in this case, and his positive testimony is that he did not receive such notice and knew nothing of the increase in his assessments until he went to pay his taxes in the spring of 1928. The evidence further shows that plaintiff omitted to apply to the board of equalization in 1928 for adjustment of his assessment for the year 1928-1929, his testimony being to the effect that he did not think it was worth while. Plaintiff permitted the action of the assessor to go unchallenged until the spring of 1929, at which time he paid the first and second half of his taxes for 1928 under protest and filed the suits above set forth, seeking to recover the excessive taxes on the theory that the same were illegal and void.

The question to be determined by us on this appeal is whether or not under these circumstances the plaintiff is entitled to maintain this action under the provisions of section 9971, C. O. S. 1921 (sec. 12665, O. S. 1931), or whether his remedy was confined to filing a protest with the board of equalization in 1928, and in the event of an adverse ruling by said body appealing to the district court in accordance with the provisions of section 9966, C. O. S. 1921 (sec. 12660, O. S. 1931).

Section 9960, C. O. S. 1921 (amended by

chap. 129, Session Laws 1923-24, sec. 12581, O. S. 1931), in part provides as follows:

"Real property shall be listed and assessed only once in every two years beginning in the year 1915 continuing every two years thereafter."

Section 9619, C. O. S. 1921 (sec. 12598, O. S. 1931), provides in part:

"All property is to be valued to the assessor, by the person whose duty it is to list the same, but the assessor may place a different value on the same if he is satisfied that the value so given is not correct, and he shall give to the person so listing the same, a copy of the schedule; and the assessor shall seek to have assessed the same classes of property at a uniform value throughout the county."

In re Rolater et al., 67 Okla. 215, 170 P. 507, we said:

"The purpose of this provision of the statute is to advise the property owner of the increased amount for which the property is to be taxed, and afford him an opportunity to appear, if he desires, before the Board of Equalization to protest."

And again, in Re Inglis, 69 Okla. 64, 169 P. 1083, we said:

"While in this case it does not appear that the assessor made a copy of the schedule and gave the same to the appellant, the appellant, several weeks before the assessor's return to the county board of equalization made copies for himself of the schedule without demanding that the tax assessor furnish the same."

The holding in both of these cases is to the effect that where the taxpayer has the information necessary to protect him in due time, and either appears before the equalization board to protest, or is afforded ample opportunity to do so, thereupon the purpose of the statute is accomplished and strict technical compliance with the above section is unnecessary.

The plaintiff relies chiefly upon the case of Hays v. Bonaparte, 129 Okla. 258, 264 P. 605, and other cases of similar import. We observe that such cases are based upon the theory and conclusion of law and fact that the property owner was afforded no resort to an administrative board for a correction of the assessment, and they are not applicable under the facts here.

The record here shows that in the early part of the year 1928, and prior to the meeting of the board of equalization in 1928, the plaintiff was fully advised of the condition of the assessment and offers no showing of inability to appear before that board. We

are, therefore, of the opinion that the rule announced in Huston v. Curtis Companies, Inc., 160 Okla. 216, 16 P. (2d) 874, applies. In the first, second and fourth paragraphs of the syllabus we held:

"Before a party can pay his taxes under protest and bring an action to recover the illegal portion, if any, thereof under section 9971, C. O. S. 1921 (O. S. 1931, sec. 12665), he must allege facts showing that the illegality of the tax arises by reason of some action from which the law provides no appeal, or that the failure to give such party notice of the increase deprives such party of due process of law.

"Due process of law is shown when opportunity is conferred to invoke the equal protection of the law by judicial proceedings to secure the end and object sought to be attained.

"When the statutes provide a remedy against an excessive, erroneous, or improper assessment of the property of an individual, as by sections 9966 and 9674, C. O. S. 1921 (O. S. 1931, secs. 12660, 12642), by proceedings before a board of equalization or review, the taxpayer must at his peril avail himself of such remedy, and cannot resort to the courts in the first instance."

In Abernathy v. Huston, Co. Treas., 166 Okla. 184-191, 26 P. (2d) 939, in the body of the opinion, Mr. Justice Busby, speaking for this court, said:

"The issue of law is settled in the case of Hays v. Bonaparte, 129 Okla. 258, 264 P. 605, the syllabus in that case reading as follows:

" 'When property has been voluntarily listed for taxation by the owner and the valuation placed thereon by him is increased by the assessor or by the board of equalization without timely notice to him or without his knowledge or consent, and he is thereby deprived of his right of appeal, his remedy is to pay the taxes under protest and proceed in accordance with the provisions of section 9971, C. O. S. 1921.'

"As announced in that case, it is essential for the protesting taxpayer seeking recovery to have been without either notice or knowledge of the increase in valuation of which he complains. In other words, it must appear that he was deprived of an opportunity to pursue the regular statutory course for complaining of the increase in valuation by lack of knowledge or notice thereof."

Section 9671, C. O. S. 1921 (O. S. 1931, sec. 12646), creates a county board of equalization to be composed of the county commissioners, and the county assessor shall be secretary of said board. It then provides that:

"The county equalization board shall meet at the county seat, and shall hold a session commencing on the first Monday in June of each year for the purpose of equalizing taxes over the county, notice of which shall be given at least ten days prior thereto in some newspaper of general circulation in the county. Provided, however, should the assessment rolls. be not received from the assessor, they shall adjourn from time to time, until said rolls shall have been received. Any person who may think himself aggrieved by the assessment of his property shall have the right to appear before the board for the purpose of having the assessment of his property adjusted. Complaints against the assessment shall be determined by the board in a summary manner, and the assessor's list shall be corrected and adjusted accordingly. Provided, that an appeal may be taken from the final action of said board as provided by law. Said board shall have the authority to raise, lower or adjust individual assessments, fixing the same at the fair cash value of the property; to add omitted property and to cancel assessments of property not taxable. When any assessment has been raised, or other property added thereto, by the board, five days' notice thereof, in writing shall be given to the owner of such property, or his agent, properly mailed to such person, at his post-office address appearing on the assessment sheet, to appear at a time and place fixed in said notice, and show cause why such assessment shall not be increased or other property added thereto."

Under the provisions of the above-quoted statute plaintiff might have appeared before the board of equalization at its meeting in 1928, and protested the 1928 assessment had he so desired. He had actual notice of the increase in time to do this, but in his testimony stated that he did not think it worth while. Under these circumstances we are of the opinion that he was not entitled to proceed under the provisions of section 9971, C. O. S. 1921 (O. S. 1931, sec. 12665), but that his remedy was confined to a proceeding under section 9966, C. O. S. 1921 (O. S. 1931, sec. 12660), and that a failure to avail himself thereof precludes his maintaining this action. As said in Cotton v. Blake, Co. Treas., 133 Okla. 60, 270 P. 1105:

"When the statutes provide a remedy against an excessive, erroneous, or improper assessment of the property of an individual, as by sections 9966, 9674, C. O. S. 1921, by proceedings before a board of equalization for review, the taxpayer must at his peril avail himself of such remedy, and cannot resort to the courts in the first instance."

A number of authorities are cited and quoted in the briefs relative to the power and authority of the board of county commissioners under section 9674, C. O. S. 1921 (sec. 12642, O. S. 1931), but from the conclusions we have reached in this case they are neither pertinent nor persuasive.

Under the record here presented and the authorities cited above, we conclude that the judgment of the trial court was correct, and the same is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, WELCH, CORN, and GIBSON, JJ., concur. BAYLESS and BUSBY, JJ., absent. PHELPS, J., not participating.