**G. A. NICHOLS, Inc., v. BONAPARTE, County Treas., et al.**

No. 25971.    Feb. 18, 1936.

Gordon Stater, Wilson & Wilson, Shirk, Danner & Earnheart, Snyder, Owen & Lybrand, L. D. Threlkeld, and Mont F. Highley, for plaintiff in error.

Lewis R. Morris, County Atty., and B. C. Logsdon and Phil E. Daugherty, Asst. County Attys., for defendants in errors.

RILEY, J. This is an appeal from a judgment for the defendant in an action by plaintiff in error to recover taxes paid under protest.

The taxes sought to be recovered were paid for the fiscal year 1928-29.

Plaintiff owned a large number of lots and parcels of real estate which he contended had been returned for assessment during the year 1927. He further contends that after the return was made the assessment was raised without any notice whatever to plaintiff, and that plaintiff knew nothing about said raise in the assessed valuation of said property until after it was too late to go before the county board of equalization, and was thereby deprived of the right of appeal to the district court.

There was also a claim of a similar nature as to the personal property assessment.

The protest under which the taxes were paid did not particularize as to the specific items of alleged wrongful valuation as to the real estate.

At the trial, however, evidence was introduced tending to show that in addition to the raise made by the county assessor on the 1927 assessment roll, the county assessor had placed assessments against certain of plaintiff's lots on account of improvements placed thereon before the first of January, 1928, when in fact the improvements were not placed upon said lots until after January 1, 1928, and the claim is as to such improvements that part of plaintiff's real estate was not liable for taxation for the fiscal year 1928-29.

Plaintiff paid all the taxes assessed against his property for the fiscal year 1927-28, without protest and before the meeting of the county board of equalization in 1928.

All the questions as to the personal property taxes and the real property claimed as invalid because of the raise in the assessment in 1927 have been decided adversely to the contention of plaintiff in error in the cases of Keaton v. Bonaparte, Co. Treas., 174 Okla. 316, 50 P. (2d) 404, First Natl. Bk. & Trust Co. v. Bonaparte, Co. Treas., 174 Okla. 315, 50 P. (2d) 407, Bonaparte,

Co. Treas., v. Walker, and Bonaparte, Co. Treas., v. Tradesmen's Natl. Bk., 175 Okla. 530, 53 P. (2d) 1106.

We deem it unnecessary to again consider said questions, and they will be treated as settled in the above cases. This leaves for consideration in this case only the question of taxes levied for the fiscal year 1928-29 against improvements placed upon certain lots after they were assessed for the fiscal year 1927-28.

Nine lots are thus affected, one in Gatewood addition, one in University addition (plaintiff treats two lots as one), and seven in Lincoln Terrace addition.

Plaintiff in effect contends that the evidence conclusively shows that as to said nine lots the assessed value was increased for the year 1928, over that of 1927, $43,650, on account of improvements placed thereon after the 1927 biennial assessment of the real estate.

It is then contended that such increase in value could be legally made only in case such improvements were on the lots before January 1, 1928.

It is further contended that the evidence conclusively shows that none of the improvements so charged were placed on said lots or any of them until after January 1, 1928, and on account thereof plaintiff, under protest, paid about $2,076.86 in taxes which were illegally charged against said real estate.

The county attorney in a supplemental brief contends that at most there was but a conflict in the evidence as to the increased assessments and whether improvements were on said lots before January 1, 1928, and that the finding of the trial court, being general and in favor of defendant, it includes a finding that said improvements were on said lots on January 1, 1928, and there being some evidence reasonably tending to support such findings, the judgment must be sustained.

Defendant further contends that plaintiff pursued an improper remedy, and that his only remedy was to proceed before the board of equalization and the board of county commissioners.

Under the record in this case, proceedings before the county board of equalization were not open to plaintiff, in that it appears that plaintiff did not discover the alleged illegal increase until 1929, long after the adjournment of the board of equalization.

The question, then, is whether plaintiff's remedy was to pay the taxes under protest and sue to recover under section 9971, C. O. S. 1921, or under the provisions of sections 9648 and 9674, C. O. S. 1921.

In Hays v. Bonaparte, Co. Treas., 129 Okla. 258, 264 P. 605, it is held:

"When property has been voluntarily listed for taxation by the owner and the valuation placed thereon by him is increased by the assessor or by the board of equalization without timely notice to him or without his knowledge or consent and he is thereby deprived of his right of appeal, his remedy is to pay the taxes under protest and proceed in accordance with the provisions of section 9971, C. O. S. 1921."

To the same effect is In re Gibbens et al., 142 Okla. 180, 286 P. 318.

The remedy provided in section 9971, supra, has been said to be exclusive. Black et al. v. Geissler et al., 58 Okla. 335, 159 P. 1124; Town of Burbank v. Sheel et al., 131 Okla. 292, 268 P. 1106.

In Dolese Bros. Co. v. Bd. of Co. Com., 151 Okla. 110, 2 P. (2d) 955, Hays v. Bonaparte, supra, is quoted from with approval. But in City of Enid v. Champlin Ref. Co., 112 Okla. 168, 240 P. 604, it is said:

"The Act of 1916 (section 9674) was clearly intended to give the taxpayers a remedy against errors of taxation, when the taxpayer for some good reason failed to appear before the board of equalization, and being a remedial statute, it must be construed liberally in behalf of those for whom relief is provided and to effect its purpose."

In the case of Hays v. Bonaparte, supra, this court, in referring to sections 9674 and 9648, supra, said that "these two sections give the county commissioners jurisdiction in at least three classes of cases in which the board is authorized to issue certificates of error in assessment," and then enumerated them as follows:

"They are as follows: First, when property has been assessed to any person not owning or claiming to own the same; second, when property has been assessed that is exempt from taxation; third, when property has been assessed more than once for the taxes of the same year or has been assessed for taxes for a year to which the same was not subject to taxation."

It was then said:

"Neither of these sections confers on the county commissioners jurisdiction in a case where the valuation has been raised by the county assessor or by the board of equaliza

tion. It follows that the county commissioners have no jurisdiction to grant plaintiff relief."

It may have been thought for a while that by the enumeration of the three classes of cases as above the court meant that these were the only cases where the board of county commissioners had jurisdiction. But this is not a case where the valuation was increased by the county assessor or by the board of equalization. It is a case of primary assessment so far as the improvements placed upon the lots were concerned.

In the Hays Case, supra, it is also said:

"If the commissioners had jurisdiction to grant relief in plaintiff's cause of action, he could not maintain his suit here, but his remedy would be before the county commissioners, and in case of an adverse decision an appeal therefrom."

In the later case of State v. State ex rel. Shull, 142 Okla. 293, 286 P. 891, the class of cases in which the board of county commissioners had jurisdiction is extended somewhat. It is there held:

"Under section 9674, C. O. S. 1921, 'the board of county commissioners of each county is authorized to hear and determine allegations of erroneous assessments, mistakes, or errors made in assessing or preparing the tax rolls or in the description of land or other property, before the taxes have been paid, on application of any person or persons who shall show by affidavit good cause for not having attended the meeting of the county board of equalization for the purpose of correcting such erroneous assessment, error, mistake or difference. * * *'"

And:

"The words 'erroneous assessment,' as used in section 9674, were not used in the act of the Legislature in the sense of 'illegal,' but that the assessment was inequitable merely."

I. T. I. O. Oil Co. v. Blake, Co. Treas., 154 Okla. 151, 7 P. (2d) 153, is a case somewhat similar to the one here under consideration. There the taxpayer commenced a proceeding before the board of county commissioners, had an adverse decision, failed to appeal, and after that commenced an action to recover the taxes paid under protest.

After reciting the proceedings before the county commissioners, the court said:

"This was the proper procedure for plaintiff to pursue, and the only remedy available to plaintiff."

It is quite clear that plaintiff in the instant case, so far as the alleged assessment on account of the improvements is concerned, had a complete remedy under section 9674, C. O. S. 1921, then in force. Plaintiff's whole case is based upon the proposition that it was being taxed upon property it did not own on January 1, 1928. If the improvements were not in existence on January 1, 1928, plaintiff could not have owned them. Section 9674, C. O. S. 1921, specifically provides for a hearing upon a proper showing before the board of county commissioners "before the taxes have been paid." And also provides:

"* * * And if upon such hearing it appears that any personal or real property has been assessed to any person, firm or corporation not owning or claiming to own the same, or that property exempt from taxation has been assessed, it shall be the duty of the board of county commissioners to correct such error, and the county clerk, upon the order of said board, shall issue a certificate of error to the county treasurer, stating amount of such correction, which amount the treasurer shall deduct from the original assessment or assessed amount."

The remedy was provided, and this court has lately held that where there was a remedy under section 9648, or 9674, such remedy is exclusive.

In I. T. I. O. Co. v. Blake, supra, it is said:

"Plaintiff's remedy was to appeal from the order of the board of county commissioners overruling its petition and affidavit, and since it failed to perfect its appeal from said order, the order of the board became final and conclusive of said matter."

Section 9674, supra, was repealed by chapter 115, S. L. 1933, but section 9648, C. O. S. 1921, was left intact.

We deem it unnecessary to discuss the question of whether or not there was conflict in the evidence on the question of whether or not the improvements were on the lots in question on January 1, 1928, except to say that there is evidence in the record tending to show that six of the lots in Lincoln Terrace addition were taxed for the year 1927 as improved lots. On one of the lots in Lincoln Terrace, the evidence shows that in 1928 plaintiff paid only on a valuation of $250, which was the same valuation placed on that lot in 1927. This leaves but two lots of which it could be said there was no conflict in the evidence. Counting lots 9 and 10, in block 48, University addition, as one tract, the added valuation was $3,500 instead of $7,500, as claimed by plaintiff. On lot 4, block 16, Gatewood

addition, there appears to be an added valuation of $4,000.

Concluding as we do that this case is governed by the rule adopted in I. T. I. O. v. Blake, supra, the judgment must be, and is, affirmed.

McNEILL, C. J., and WELCH, CORN, and GIBSON, JJ., concur.